**Opinion filed June 13, 2019**



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00162-CR

_____

## TOMAS SALINAS BAEZA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR46606**

## M E M O R A N D U M   O P I N I O N

Appellant, Tomas Salinas Baeza, appeals from his conviction for the first-degree felony offense of aggravated robbery. Upon Appellant's plea of true to an enhancement allegation, the trial court assessed Appellant's punishment at confinement for twenty-five years and sentenced him accordingly. In one issue on appeal, Appellant argues that the evidence presented at trial was legally insufficient to support his conviction. We disagree. We affirm the trial court's judgment.

*Background Facts*

Appellant was indicted with one count of aggravated robbery with a deadly weapon. At trial, Cody Loveless testified that, on the day of the alleged offense, he was working as a car salesman at his family's business when Appellant approached him and inquired about a car. Although Appellant asked to test-drive one of the cars, Loveless told Appellant that Appellant would have to sit in the passenger seat while Loveless drove the car. Loveless admitted that, at the time, he did not trust Appellant because Appellant had not driven, but had walked up, to the car lot. After test-driving the first car, Loveless took Appellant out for a test-drive in two other vehicles. During the test-drive of the second vehicle, Loveless switched seats with Appellant partway through the test-drive and allowed Appellant to drive. Likewise, during the test-drive of the third vehicle, a 2002 Dodge Dakota pickup, Loveless again exited the vehicle to switch seats with Appellant so that Appellant could drive. However, this time, Appellant "jumped straight from the passenger seat to the driver seat," "threw [the pickup] into gear," and "floored it" while Loveless was walking behind the pickup to switch seats. Loveless testified that he jumped onto the back of the pickup and held onto the bed rail as Appellant drove off. Loveless explained that, while he was holding onto the side of the pickup, Appellant "started swerving all over the road." Eventually, Loveless let go of the pickup and "slid down the street"—breaking his leg and ankle and suffering road rash in the process. Loveless also testified that the pickup might have run over his ankle. Michael McCurdy, a bystander, testified that he observed Loveless go underneath the pickup.

Although Loveless admitted that Appellant never threatened him before stealing the pickup and that he did not believe Appellant was attempting to run over him, Loveless testified that he did believe Appellant was trying to get him off the pickup by swerving. Loveless further testified that his leg required surgery, he still

2

suffers pain to this day, and his doctors have informed him that his physical condition is likely to deteriorate as he ages.

Officer April Chandler and Sergeant Anthony Corson of the Midland Police Department and Deputy Chet Thatcher of the Midland County Sheriff's Department also testified at trial. Officer Chandler explained that she was able to gather photographs of Appellant's face from surveillance footage obtained from neighboring businesses. Following dissemination of Appellant's photograph to the public, the police received a tip that the suspect in the photograph was Appellant. Based on the tip, Sergeant Corson conducted a photo lineup with Loveless, who identified Appellant's picture as the man who had stolen the pickup. The police then tracked Appellant's phone and apprehended Appellant driving the stolen pickup. Deputy Thatcher noted that the VIN numbers on the pickup had been partially scratched off.

After hearing the evidence, the jury found Appellant guilty. The trial court assessed punishment at confinement for twenty-five years and sentenced Appellant accordingly. This appeal followed.

*Analysis*

In one issue on appeal, Appellant argues that the evidence against him was legally insufficient to support his conviction for the offense of aggravated robbery. Specifically, Appellant argues that the evidence failed to prove the requisite mental state and causation elements of the offense. Appellant insists that Loveless's injuries were the result of his own actions in deciding to grab, hold onto, and attempt to stop the pickup and that Appellant did not know, and could not have foreseen, that Loveless would attempt to do so. As such, Appellant argues that the evidence was insufficient to prove that Appellant intentionally, knowingly, or recklessly caused bodily injury to Loveless. We disagree.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

As relevant to this case, a person commits the offense of aggravated robbery if, during a robbery, the person uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2019). A person commits robbery when, in the course of committing theft—the unlawful appropriation of property with intent to deprive the owner of the property—the person either (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* §§ 29.02(a), 31.03(a). A

"[d]eadly weapon" is "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17). A motor vehicle is not a deadly weapon per se, but it may be found to be one if it is used in a manner that is capable of causing death or serious bodily injury. *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014). "A defendant uses his motor vehicle in a manner that is capable of causing death or serious bodily injury, even when no actual death or serious bodily injury occurs and regardless of his intent, when there is more than a hypothetical potential for danger if others are present." *Brown v. State*, No. 02-18-00105-CR, 2019 WL 1179395, at *2 (Tex. App.—Fort Worth Mar. 14, 2019, no pet.) (mem. op., not designated for publication) (citing *Moore v. State*, 520 S.W.3d 906, 913 (Tex. Crim. App. 2017)).

Here, Appellant was charged with aggravated robbery by means of using a deadly weapon—a motor vehicle. *See* PENAL § 29.03(a)(2). Appellant does not contest that the motor vehicle was a deadly weapon. Instead, Appellant focuses on the causation and intent elements of the underlying offense of robbery and argues that the State failed to prove that he "intentionally, knowingly, or recklessly caused bodily injury to Cody Loveless." *See id.* §§ 29.02(a)(1), .03. Appellant points to Loveless's testimony that he did not believe Appellant was trying to run over him with the pickup as evidence that Appellant did not have the requisite mental state to injure Loveless. However, Loveless also testified that he believed that Appellant was attempting to throw him off the pickup by swerving. Furthermore, McCurdy testified that Appellant appeared to have run over Loveless with the pickup. Thus, the jury could have reasonably inferred that, at a minimum, Appellant drove the pickup in a reckless manner, thereby inflicting bodily injury on Loveless, or, more likely, that Appellant knew that Loveless was holding onto the pickup and that Appellant was attempting to throw him off the pickup by swerving. *See Jackson*,

5

443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. Likewise, although Appellant argues that Loveless's injuries were the result of Loveless's own actions in attempting to grab onto the pickup as Appellant drove off, it is not unforeseeable that the owner of property would attempt to protect his property from a theft. *See, e.g.*, *Brown*, 2019 WL 1179395, at *2–3 (evidence was sufficient to find defendant guilty of the offense of aggravated assault with a deadly weapon where defendant stole a vehicle during a test-drive and a car salesman gave chase on foot, grabbed ahold of the vehicle, and was subsequently thrown into a parked car). In fact, a property owner is often justified in the use of force, including, in some cases, deadly force, to prevent or terminate another's unlawful interference with property. *See* PENAL §§ 9.41, .42. As such, a reasonable jury could have found that, notwithstanding Loveless's attempt to retain possession of his property, Appellant's theft of the pickup was the cause of Loveless's injuries. *See, e.g.*, *Brown*, 2019 WL 1179395, at *2–3. Therefore, we believe the jury could have reasonably found each element of the offense of aggravated robbery beyond a reasonable doubt. *See* PENAL § 29.03(a)(2). We overrule Appellant's sole issue.

*Conclusion*

We affirm the judgment of the trial court.


KEITH STRETCHER

June 13, 2019                                           JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.